UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JAMES L. MCBRIDE, JR.,

                Plaintiff,

vs.                         Case No.  2:06-cv-621-FtM-29DNF

CAPTAIN CREWS, 1ST SGT. WATTS, and
SGT. CROKER,

                Defendants.
_____/

## OPINION AND ORDER

This matter comes before the Court upon Defendants' joint Motion to Dismiss ("Motion," Doc. #25) filed on March 19, 2007.  On April 11, 2007, Defendants submitted affidavits in support of the Motion (Docs. ## 28-29).  Consequently the Court construed Defendants' joint Motion as a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, and, on April 12, 2007, advised Plaintiff to file a response to the Rule 56 Motion within twenty days (Doc. #31).  As of the date of this Order, Plaintiff has failed to file a response to Defendants' Motion, or request an extension of time to do so, and the time for doing so has long since expired.  This matter is now ripe for review.

I.

*Pro se* Plaintiff, while incarcerated within the Lee County Jail, filed a civil rights complaint form pursuant to 42 U.S.C. § 1983 ("Complaint," Doc. #1) alleging constitutional violations stemming from a July 25, 2006, incident in which Plaintiff claims

he was subjected to excessive use of force, as well as the general conditions of his confinement at the Lee County Stockade. According to the Complaint, on July 25, 2006, Plaintiff was being escorted by correctional officers to a housing unit at the Lee County Stockade facility.  Plaintiff refused to enter the unit, demanding instead to speak to the sergeant.  Complaint at 8-9.[1] Correctional officers summoned Defendant Croker and explained that Plaintiff was refusing to enter his unit.  Id.  Plaintiff explained to Croker that the unit was "overcrowded" and exceeded "the capacity allowed by the Florida Model Jail Standards."  Id. at 9. Defendant Croker again ordered Plaintiff into the unit.  Id. Plaintiff instead "knelt down on [his] knees" and again "refused to be housed in a[n] unsanitary environment" that Plaintiff describes as having no air conditioning, no space for sleeping, and "not enough sanitary cleaning chemicals."  Id.  Defendant Croker gave an order to the officers to spray Plaintiff with chemical agents.  Id. Plaintiff states that the officers sprayed him "until each can was indeed empty."  Id.  Plaintiff was then handcuffed and, with the assistance of three correctional officers who are not named as Defendants, Plaintiff was "force[d] up to [his] feet and dragged into" the assigned housing unit.  Id.  Plaintiff states that a

---

[1]The page numbers referenced herein are to the page of each particular document as it appears on the Court's case management electronic computer filing system.

"nurse was notified" and his "handcuffs were taken off." Id. Plaintiff does not claim any injury as a result of the spraying.

Plaintiff complained of the incident to Defendant Watts, who advised Plaintiff that he "should have obey[ed] the rules." Id. Plaintiff then claims he filed a formal grievance with Defendant Crews, who "didn't respond at all." Id. Plaintiff does not attach a copy of either grievance to his Complaint. Plaintiff complains that he was forced to live in "unsafe and [un]sanitary conditions." Id. at 10. At some point in time, Plaintiff began to itch and was given an ointment by medical for "mites or scabies" that covered his body. Id. As relief, Plaintiff seeks to have "all officers involved charge[d] accordingly with excessive force" and the "Lee County Sheriff Department" held liable "for abuse and failure to provide care and custody standards, pain and suffering." Id.

Defendants, who are Lee County Jail correctional officers, move for summary judgment (Doc. #25). In support of their Motion, Defendants attach the Affidavits of Captain Betts ("Betts Aff.")[2], 1st Sergeant Watts ("Watts Aff."), and Sergeant Croker ("Croker Aff."). Defendants contend that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act. Motion at ¶3. Additionally, Defendants argue that the

---

[2]Subsequent to the events complained of in the Complaint, Defendant Crews got married and changed her name to Betts. Betts. Aff. at ¶2. For purposes of clarity, the Court will refer to Defendant Crews as Crews-Betts.

"Complaint on its face provides a penological justification for the use of force." Id. at ¶4. Nor, does Plaintiff allege a significant injury as a result of the use of force. Id. at ¶5. Further, Plaintiff's claims predicated on the theory of respondent superior are not cognizable. Id. at ¶7. Finally, Defendants maintain that Plaintiff's allegations of overcrowding are conclusory. Id. at ¶6.

## II.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue at to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. Id. The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with

extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial motion. <u>Celotex</u>, 477 U.S. at 322; <u>Hilburn v. Murata Electronics North America, Inc.</u>, 181 F.3d 1220, 1225 (11th Cir. 1999).  In ruling on a motion for summary judgment, if there is a conflict in the evidence, the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party.  <u>Shotz v. City of Plantation, Fl.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003).  Conclusory allegations based on subjective beliefs, however, are insufficient to create a genuine issue of material fact.  <u>Leigh v. Warner Bros., Inc.</u>, 212 F.3d 1210, 1217 (11th Cir. 2000).  In the summary judgment context, the Court must construe *pro se* pleadings more liberally than those of a party represented by an attorney.  <u>Loren v. Sasser</u>, 309 F.3d 1296, 1301 (11th Cir. 2002).

## III.

Title 42 U.S.C. § 1983 imposes liability on one who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws."  To state a claim under 42 U.S.C. § 1983, Plaintiff must allege that: (1) Defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred

under color of state law.  Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001).  In addition, plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation.  Marsh v. Butler County, Ala., 268 F.3d 1014, 1059 (11th Cir. 2001); Swint v. City of Wadley, Ala., 51 F.3d 988 (11th Cir. 1995); Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994). A civil complaint filed by a prisoner with respect to prison conditions may not be brought unless the prisoner first exhausts all available administrative remedies. 42 U.S.C. § 1997e(a).

Defendants contend that Plaintiff failed to exhaust his available administrative remedies.  According to the allegations set forth in the Complaint, Plaintiff filed a complaint about the July 25, 2006, incident with Defendant Watts, who advised Plaintiff that he "should have obey[ed] the rules."  Complaint at 10. Plaintiff also alleges that he filed a formal grievance with Defendant Crews/Betts, who "didn't respond at all." Id. Defendant Watts does not refute that Plaintiff filed a grievance with him. Defendant Crews/Betts states that she did not receive a grievance or "any written communication" from Plaintiff. Crews/Betts Aff. at ¶¶7-8.  There is no evidence in the record as to what administrative remedies are available to inmates at the Lee County Jail to refute the allegations in Plaintiff's Complaint.

Consequently, the Court will treat Plaintiff's claims as exhausted for purposes of this Opinion and Order.  See <u>Jones v. Bock</u>, ___ U.S. ___, 127 S.Ct. 910, 920-21 (2007).

Nonetheless, with respect to Defendants Crews/Betts and Watts, the Complaint states only that Plaintiff submitted grievances to these Defendants.  Both Defendants Crews/Betts and Watts attest that they did not have any contact with Plaintiff on the date of the incident.  Crews/Betts Aff. at ¶4; Watts Aff. at ¶4.  The Complaint contains no other facts or allegations pertaining to these two Defendants' involvement in the alleged constitutional deprivations.  A defendant who occupies a supervisory position may not be held liable under a theory of *respondeat superior* in a § 1983 action.  <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 690-692 (1978); <u>Quinn v. Monroe County</u>, 330 F.3d 1320, 1325 (11th Cir. 2003); <u>Farrow v. West</u>, 320 F.3d 1235 (11th Cir. 2003). To impute a supervisor with knowledge, the knowledge "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights."  <u>Tittle v. Jefferson County Comm'n</u>, 10 F.3d 1535, 1542 (11th Cir. 1994).  Moreover "filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied."  <u>Haverty v. Crosby</u>, No. 1:05-CV-00133, 2006 WL 839157 *5 (N.D. Fla. Mar. 28, 2006)(citations omitted).  Thus,

Plaintiff's Complaint is dismissed as to Defendants Crews/Betts and Watts. The Court will address the merits of Plaintiff's claims as against Defendant Croker only.

**IV.**

**A.   Eighth Amendment/Excessive Use of Force**

Liberally construing the Complaint, Plaintiff alleges violations of the Eighth Amendment under the United States Constitution. <u>See generally</u> Complaint. It is not clear whether Plaintiff was a pretrial detainee or an inmate at the time of the events of which he complains. Nonetheless, even if Plaintiff's rights as a pretrial detainee are governed by the Fourteenth Amendment rather than the Eighth Amendment, the applicable standard is the same. <u>Cottrell v. Caldwell</u>, 85 F.3d 1480, 1490 (11th Cir. 1996). Thus, the case law developed with regard to the Eighth Amendment prohibitions against cruel and unusual punishment is equally applicable to claims arising under the Fourteenth Amendment. <u>Cottone</u>, 326 F.3d 1352, 1357 n.4 (11th Cir. 2003)(citations omitted).

Under the Eighth Amendment, it is the "unnecessary and wanton infliction of pain" caused by force used "maliciously and sadistically" for the very purpose of causing harm that constitutes cruel and unusual punishment. <u>Whitley v. Albers</u>, 475 U.S. 312, 322 (1986). Thus, where an Eighth Amendment claim is based upon allegations of excessive force, the question turns on whether the

correctional officer's "force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm." Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005). To determine whether force was applied "maliciously and sadistically," courts consider the following factors: "(1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them." Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999) (quotations and citations omitted). Moreover, in the context of prison discipline, a distinction is made between "punishment after the fact and immediate coercive measures necessary to restore order or security." Ort v. White, 813 F.2d 318, 324-25 (11th Cir. 1987). The court conducts a more deferential review of an official's actions when institutional safety is of concern. Williams v. Burton, 943 F.2d 1572, 1575 (11th Cir. 1991)(citations omitted). "That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches in prison discipline." Whitley, 475 U.S. at 322; See also Bell v. Wolfish, 441 U.S. 520,

547 (1979).  Mace can be constitutionally used in small quantities to "prevent riots and escapes" or to control a "recalcitrant inmate."  Landman v. Peyton, 370 F.2d 135, 138 & n. 2 (4th Cir. 1966), cert. denied, 388 U.S. 920 (1967).  A limited application of mace may be "much more humane and effective than a flesh to flesh confrontation with an inmate."  Soto v. Dickey, 744 F.2d 1260, 1262 (7th Cir. 1984).  Moreover, prompt washing of the maced area of the body will usually provide immediate relief from pain.  Id.

It is undisputed that the incident giving rise to Plaintiff's claim occurred in response to Plaintiff's verbal and physical refusal to obey at least two orders while Plaintiff was outside of his unit and not yet handcuffed.  Complaint at 9; Crocker Aff. at ¶¶5-6.  Defendant Croker advised Plaintiff that "he was cleared by classification to be housed in barracks. . ." and that "his failure to follow an express order would result in the use of Oleoresin Capsicum (O/C spray)."  Id. at ¶¶7-8.  Instead of complying with the order, Plaintiff, in a show of defiance, knelt down on the floor. Complaint at 9.  As a result of Plaintiff's noncompliance, Defendant Croker "instructed Deputies Nieves and Smith to apply O/C spray to [Plaintiff]."  Crocker Aff. at ¶9.  Plaintiff claims that the deputies sprayed him "until each can was indeed empty."  Complaint at 9.  Defendant Croker testifies that "Deputies Nieves and Smith did not apply any greater quantities of O/C spray upon [Plaintiff] than what was needed to obtain his cooperation."

Crocker Aff. at ¶10.   The Court does not finds these statement contradictory since there is no evidence as to how long the spraying lasted, or how much spray was contained in the canisters. It is undisputed that the force that was used on Plaintiff was "not with the sole purpose of infliction of pain" but rather was used as an attempt to gain Plaintiff's compliance.   Id. at ¶11.   Plaintiff was then handcuffed, assisted to a standing position, and seen by medical.   Id. at ¶12.

Here, the record establishes the need for force without contradiction.   Plaintiff was recalcitrant and defiant in his actions.   He was advised of the potential consequences of his noncompliance with Defendant Croker's order.   There is no evidence that the spraying was excessive or done solely to inflict pain upon Plaintiff.   Further, Plaintiff was seen by medical after the spraying.   In fact, the Complaint is devoid of any allegations that Plaintiff sustained any type of injury, let alone more than a *de minimus* injury, as a result of the spraying.   The Court recognizes that inmate discipline and strict compliance with orders is essential in a penal institution.   Indeed, this Court recognizes that correctional officers must be afforded wide discretion to implement a policy that in their judgment is necessary to maintain discipline and preserve internal security.   Soto v. Dickey, 744 F.2d at 1269 (citing Bell v. Wolfish, 441 U.S. at 547-548). Consequently, the Court finds that based on the record, Defendant

Croker's response to Plaintiff's repeated refusals to obey orders was not violative of Plaintiff's constitutional rights. Thus, Defendant Croker is entitled to summary judgment with respect to Plaintiff's Fourteenth or Eighth Amendment claim alleging an excessive use of force.

**B. Eighth Amendment/ Conditions of Confinement**

Plaintiff claims violations of the Eighth Amendment with respect to the general conditions of Lee County Stockade facility. The "cruel and unusual punishment" standard, which originally proscribed barbarous methods of punishment, has evolved to reflect society's "standards of decency." Rhodes v. Chapman, 452 U.S. 337, 345-46 (1981), Estelle v. Gamble, 429 U.S. 97, 102 (1976). The court employs a two-part analysis in determining whether the conditions of a plaintiff's confinement violates the Eighth Amendment. Hudson v. McMillan, 503 U.S. 1, 8 (1992). First the condition must be objectively and sufficiently serious or "extreme" to show that it "pose[s] an unreasonable risk of serious damage to [a plaintiff's] future health or safety." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004). Second, plaintiff must come forward with some factual allegations to show that the defendant official "acted with a sufficiently culpable state of mind." Id. (citing Hudson, 503 U.S. at 8). Negligence is not enough. Chandler, 379 F.3d at 1289. Rather, a plaintiff must show the defendant acted with "deliberate difference." Id. Significantly,

-12-

a defendant must (1) have subjective knowledge of a risk of harm; (2) disregard that risk; and (3) engage in conduct that rises above mere negligence.

Overcrowding of inmates in a prison is not *per se* unconstitutional. <u>Castillo v. Cameron County , Tex.</u>, 238 F.3d 339 (5th Cir. 2001). Nor does double celling alone constitute cruel and unusual punishment. <u>Rhodes</u>, 452 U.S. at 348. Rather, the conditions that result from the overcrowding may constitute a constitutional violation if they fall below the minimum Eighth Amendment decency standards. <u>Castillo</u>, 238 F.3d 339.

Here, Plaintiff generally alleges that the conditions to which he was subjected were uncomfortable, due to the lack of air conditioning and space for sleeping; and, were unsanitary, due to insufficient cleaning supplies. Complaint at 9. Defendants acknowledge that the barracks at the Lee County Stockade are "crowded" but deny they are "unsanitary or unsafe." Watts Aff. ¶5. Defendants attest to the fact that the facility "meets all Florida Corrections Accreditation Commission requirements." <u>Id.</u> at ¶6. Inmates are provided with the following cleaning equipment three times a day: mop, bucket with ringer, broom, dust pan, scrub brush, deck scrub brush, toilet bowl brush spray bottle with disinfectant, spray bottle with general purpose cleaner, and plastic garbage bags. <u>Id.</u> at ¶7. All barracks are inspected on a daily basis by a sergeant, on a weekly basis by a lieutenant, and a monthly basis

by a member of the inspections division. <u>Id.</u> at ¶8.  If any barracks are found to be unclean, that inmate is subjected to certain restrictions until the barracks are brought up to standards.  <u>Id.</u> at ¶9.

Based upon the record, the Court does not find objectively that the conditions to which Plaintiff was subjected "extreme" to warrant a constitutional violation under either the Fourteenth or Eighth Amendments.  <u>Chandler</u>, 379 F.3d at 1289.

Accordingly, it is now

**ORDERED**:

1.    Plaintiff's Complaint is **dismissed** as to Defendants Crews/Betts and Watts.

2.    Defendants' Motion to Dismiss (Doc. #25), construed as a Motion for Summary Judgment, is **GRANTED** as to Defendant Croker.

3.    The **Clerk of the Court** shall: (1) enter judgment accordingly; (2) terminate any pending motions; and (3) close this file.

**DONE AND ORDERED** in Fort Myers, Florida, on this ___17th___ day of January 2008.

JOHN E. STEELE
United States District Judge

SA: hmk
Copies: All Parties of Record

-14-